UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.: _____

NORTH AMERICAN SPECIALTY
INSURANCE COMPANY,
a foreign corporation,

    Plaintiff,

v.

RIEKER DULEY CONSTRUCTION
COMPANY a/k/a RIEKER DULEY
CONSTRUCTION CORP., a Florida
corporation, RIEKER & ASSOCIATES,
INC., a Florida corporation, PATRICK H.
DULEY, an individual, BONNIE H.
DULEY, an individual, MARK W.
RIEKER, an individual, and LORI A.
RIEKER, an individual,

    Defendants.
_____/

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

Plaintiff, NORTH AMERICAN SPECIALTY INSURANCE COMPANY ("NAS"), by and through its undersigned counsel, hereby sues the Defendants, RIEKER DULEY CONSTRUCTION COMPANY a/k/a RIEKER DULEY CONSTRUCTION CORP. ("RDCC"), RIEKER & ASSOCIATES, INC., PATRICK H. DULEY, BONNIE H. DULEY, MARK W. RIEKER, and LORI A. RIEKER, (collectively with RDCC, the "INDEMNITORS"), and states as follows:

**I. JURISDICTION AND VENUE**

1.    This is an action for declaratory judgment and supplemental relief under 28 U.S.C. §220l and §2202.

2. Subject matter jurisdiction is based upon 28 U.S.C. §1332(a)(1), diversity of citizenship. The parties are citizens of different states and the amount in controversy exceeds the jurisdictional limits of this Court.

3. Plaintiff, NAS, is a corporation organized and existing under the laws of the State of New Hampshire, with its principal place of business in Kansas City, Missouri. NAS is a citizen of the state of New Hampshire.

4. Defendant, RDCC, is a corporation organized and existing under the laws of the State of Florida, whose principal place of business is located in Altamonte Springs, Seminole County, Florida. RDCC is a citizen of the state of Florida.

5. Defendant, RIEKER & ASSOCIATES, INC. ("R&A"), is a corporation organized and existing under the laws of the State of Florida, whose principal place of business is located in Oviedo, Seminole County, Florida. R&A is a citizen of the state of Florida.

6. Defendant, PATRICK H. DULEY, is an individual who resides in Lake Mary, Seminole County, Florida and who is otherwise *sui juris*. PATRICK H. DULEY is a citizen of the State of Florida.

7. Defendant, BONNIE H. DULEY, is an individual who resides in Lake Mary, Seminole County, Florida and who is otherwise *sui juris*. BONNIE H. DULEY is a citizen of the State of Florida.

8. Defendant, MARK W. RIEKER, is an individual who resides in Oviedo, Seminole County, Florida and who is otherwise *sui juris*. MARK W. RIEKER is a citizen of the State of Florida.

9. Defendant, LORI A. RIEKER, is an individual who resides in Oviedo, Seminole County, Florida and who is otherwise *sui juris*. LORI A. RIEKER is a citizen of the State of Florida.

10. The amount in controversy exceeds Seventy-Five Thousand and 00/100 Dollars ($75,000.00), exclusive of interest, costs and attorneys' fees, and this Court otherwise has jurisdiction over the subject matter hereof.

11. Venue is proper in this Court because at least one of the corporate Defendants conducted the business giving rise to the instant claims within this jurisdiction, and all of the Defendants reside in this jurisdiction.

12. All conditions precedent to the filing of the instant action have occurred or have otherwise been waived.

## II. GENERAL ALLEGATIONS

### A. The *Bonds*

13. NAS issued two *Payment Bonds* (the "*Bonds*") on behalf of RDCC, as principal:

| Bond No. | Project | Obligee | Description | Exhibit |
|---|---|---|---|---|
| 2271109 | Central Florida Authority Headquarters Building | Central Florida Expressway Authority | *Expressway Bond* | "A" |
| 2216323 | St. John the Evangelist Catholic Church | The Catholic Diocese of Orlando | *Church Bond* | "B" |

True and correct copies of the *Bonds* are attached hereto and made a part hereof as **Exhibits "A" and "B"**.

B. **The *Indemnity Agreement***

14. On or about July 10, 2009, and as a condition precedent to issuing the *Bonds*, the INDEMNITORS executed a *General Indemnity Agreement* (the "*Indemnity Agreement*") in favor of NAS. A true and correct copy of the *Indemnity Agreement* is attached hereto and made a part hereof as **Exhibit "C"**.

15. Pursuant to Article 2 of the *Indemnity Agreement*, the INDEMNITORS, jointly and severally, agreed to indemnify, hold harmless, and exonerate NAS from and against any and all losses and or expenses incurred in connection with NAS' issuance of the *Bonds*:

> ***The Indemnitors will exonerate, hold harmless, and indemnify the Surety** from and against any and all liability, loss, costs, damages, fees of attorneys and consultants, and other expenses, including interest, which the Surety may sustain or incur by reason of, or in consequence of, the **execution of such bonds*** *and any renewal, continuation or successor thereof, including but not limited to,* ***sums paid or liabilities incurred in settlement*** *of, and* ***expenses paid or incurred in connection with claims****, suits, or judgments under such bonds,* ***expenses paid or incurred in enforcing the terms hereof****, in procuring or attempting to procure a release from liability, or in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid.* (Emphasis added)

16. Pursuant to Article 3 of the *Indemnity Agreement,* each of the INDEMNITORS, individually, jointly and severally agreed to collateralize NAS upon demand:

> ***If the Surety receives any claim or lawsuit asserting liability****, or sets up a reserve to cover any liability, claim asserted, suit or judgment under any such bond,* ***the Indemnitors will, immediately upon demand, and whether or not the Surety shall have made any payment therefor, deposit with the Surety a sum of money equal to such claim or reserve and any increase thereof as collateral security on such bond***, and such sum and any other money or property which shall have been or shall hereafter be pledged as collateral security on any such bond, shall be available, in the discretion of the Surety, as collateral security on all bonds coming withing the scope of this instrument, or for any other indebtedness of the Indemnitors to the Surety; and any such collateral security shall be held subject to the terms of the Surety's regular form of receipt for collateral, which is by reference made a part hereof. (Emphasis added)

17. NAS's *prima facie* entitlement to reimbursement from the INDEMNITORS of its losses and expenses is expressly provided for under Article 8 of the *Indemnity Agreement*:

> ***An itemized statement of payments made by the Surety*** for any of the purposes specified herein, ***sworn to by an officer of the Surety***, ***or*** the voucher or ***vouchers for such payments***, ***shall be prima facie evidence of the liability of the Indemnitors*** to reimburse the Surety for such payments, with interest. (Emphasis added)

C. **Losses and Exposure under the *Bonds***

18. To date, NAS has incurred losses and/or expenses, in the amount of $165,790.50 as a result of issuing the *Expressway Bond* in favor of RDCC, comprised of the following:

   a. Progress Communications, Inc.            $62,150.00

   b. Peachtree Protective Covers              $21,725.00

   c. Mechanical Services of Central Florida   $75,000.00

   d. Attorney's Fees under *Indemnity Agreement*   $6,915.50

19. Additionally, NAS continues to be exposed to liability under the *Bonds* for losses and expenses as defined under the *Indemnity Agreement*, including, but not limited to, exposure under the *Church Bond* in the estimated amount of $195,000.00, representing the amount of a pending *Settlement Agreement* between RDCC and a payment bond claimant under the *Church Bond*, wherein NAS acts as a guarantor.

20. By correspondence dated September 29, 2020, NAS made demand upon the INDEMNITORS to immediately satisfy their obligations under the *Indemnity Agreement* by indemnifying and exonerating NAS against any losses and expenses incurred in connection with NAS's issuance of the *Bonds* and collateralizing NAS in the amount of $195,000.00, representing NAS's estimated exposure under the *Church Bond*. A true and correct copy of NAS's correspondence dated September 29, 2020, is attached hereto as **Exhibit "D"**.

21. On November 4, 2020, the INDEMNITORS responded to NAS's indemnity / collateral demand by "acknowled[ging] that NAS paid $158,875 to vendors on the [*Expressway Bond*]", but the INDEMNITORS failed and/or refused to fulfill their obligations under the *Indemnity Agreement*.

22. On November 23, 2020, NAS sent a second letter to the INDEMNITORS reiterating NAS' demand under the *Indemnity Agreement*. Nonetheless, the INDEMNITORS continued to fail and/or refuse to comply with their obligations.

23. NAS has retained the services of the undersigned counsel to represent its interests in this matter and is required to pay a reasonable fee for such services.

24. Under the *Indemnity Agreement*, the INDEMNITORS, jointly and severally, agreed to be liable for, and agreed that NAS is entitled to recover from the INDEMNITORS, any and all attorneys' fees and costs incurred in the prosecution of any action under the *Indemnity Agreement*.

## COUNT I
## SPECIFIC PERFORMANCE / INJUNCTIVE RELIEF
## DEMAND FOR POSTING OF COLLATERAL
## (AGAINST INDEMNITORS)

25. NAS re-alleges and re-avers the allegations of paragraphs 1 through 24 hereof, as if fully set forth herein.

26. This is an action for specific performance seeking equitable relief.

27. There exists a valid and fully enforceable contract between NAS and the INDEMNITORS, the terms of which are memorialized in the *Indemnity Agreement*.

28. NAS has fully performed all of its obligations under the *Indemnity Agreement*.

29. Pursuant to the Third Article of the *Indemnity Agreement*, the INDEMNITORS, jointly and severally, agreed to, upon demand, post collateral with NAS sufficient to secure NAS against any claims asserted against the *Bonds*.

30. As a result of the pending claims against the *Church Bond*, NAS has made demand upon the INDEMNITORS under the *Indemnity Agreement* to discharge NAS's liabilities and/or to post collateral to cover NAS's actual and/or potential losses and expenses.

31. Despite such demand, the INDEMNITORS have failed and/or refused to fully perform their obligations under the *Indemnity Agreement*, including but not limited to their obligation to discharge the *Church Bond* and/or post satisfactory collateral upon demand by NAS.

32. The INDEMNITORS' failure to obtain the discharge of the *Church Bond* and/or deposit the demanded collateral with NAS in accordance with the *Indemnity Agreement* has and continues to cause irreparable harm for which NAS has no adequate remedy at law.

33. NAS is fearful and apprehensive that the INDEMNITORS are or will become financially unable to pay any amounts that may be found owing to the claimant under the *Church Bond* for which NAS may be liable, or that the INDEMNITORS, based upon their refusal to obtain the discharge of the *Church Bond* and/or deposit the demanded collateral with NAS in accordance with its demands, will sell, transfer, dispose of, lien, secure or otherwise divert or conceal their assets.  NAS is also fearful and apprehensive that the INDEMNITORS will be financially unable to pay the expenses incurred and/or to be incurred by NAS, including attorneys' fees.

34. NAS is entitled to legal and equitable relief for specific performance of the INDEMNITORS' obligation to obtain the discharge of the *Church Bond* and/or deposit the demanded collateral with NAS.

35. In the absence of the equitable relief sought herein, NAS will suffer irreparable damage and loss because it will be forced to advance further funds in connection with the claim on the *Church Bond* without being adequately secured by the INDEMNITORS for its obligations under the *Church Bond*.

36. By virtue of the rights under the *Indemnity Agreement*, NAS is entitled to have the INDEMNITORS post funds or other security with NAS that is sufficient to cover the actual and/or anticipated losses and claims under the *Church Bond*.

37. Unless the relief in the nature herein requested or its equivalent is granted, NAS's equitable rights will be forever lost, depriving NAS of adequate security for its obligations under the *Church Bond*. Further, unless the equitable relief requested below is granted, the INDEMNITORS are likely to sell, transfer, dispose, lien, secure, or otherwise, divert their assets from being used to discharge the INDEMNITORS' obligations to NAS.

38. NAS has a high probability of success on the merits, as RDCC's failure to satisfy the various claims under *Church Bond* have triggered the INDEMNITORS' obligations under the *Indemnity Agreement*.

39. The threatened injury to NAS outweighs the potential damage to the INDEMNITORS if the relief requested herein is granted, and such relief would not be adverse to the public interest.

WHEREFORE, Plaintiff, NAS respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendants, INDEMNITORS, granting NAS specific performance of the *Indemnity Agreement* by directing the INDEMNITORS to either obtain the discharge of the *Church Bond* or provide satisfactory collateral to NAS to cover NAS's actual and/or potential losses and expenses, awarding NAS its attorneys' fees and costs incurred in prosecution of the instant action pursuant to the terms of the *Indemnity Agreement*, and awarding NAS such other and further relief as this Court deems necessary, just and proper.

## COUNT II
## CONTRACTUAL EXONERATION
## (AGAINST INDEMNITORS)

40. NAS re-alleges and re-avers the allegations of paragraphs 1 through 24 hereof, as if fully set forth herein.

41. This is an action for contractual exoneration.

42. NAS has incurred and/or will incur losses and expenses associated with its investigation, defense and/or handling of the above-described claims against the *Bonds*. Additional indebtedness under the *Indemnity Agreement* due and owing from the INDEMNITORS to NAS will continue to accrue, including but not limited to the expenditure of funds paid: (i) in defense of the pending claims; and/or (ii) in resolution of the pending claims.

43. Pursuant to the Second Article of the *Indemnity Agreement*, the INDEMNITORS, jointly and severally, agreed to exonerate and hold NAS harmless from and against any losses and/or expenses incurred and/or to be incurred in connection with NAS's issuance of the *Bonds*.

44. By virtue of the right of exoneration set forth in the *Indemnity Agreement*, NAS is entitled to the INDEMNITORS' assets to protect NAS from any and all losses and/or expenses which may be incurred in connection with NAS's issuance of the *Bonds*.

45. The INDEMNITORS have failed to satisfy their obligations under the *Indemnity Agreement* by refusing to exonerate or otherwise place funds with NAS sufficient to cover the losses and/or expenses incurred and/or to be incurred under the *Bonds*.

46. Unless the personal assets of the INDEMNITORS are collateralized, NAS will not be adequately secured for its obligation on the *Bonds*.

WHEREFORE, Plaintiff, NAS respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendants, INDEMNITORS, requiring the INDEMNITORS

to perform under the *Indemnity Agreement* as follows: (a) provide collateral to NAS sufficient to exonerate NAS for its potential losses and expenses to be incurred; (b) pay and reimburse NAS for its attorneys' fees and costs incurred in prosecution of the instant action; and (c) award NAS such other and further relief as this Court deems necessary, just and proper.

## COUNT III
## COMMON LAW EXONERATION
## (AGAINST RDCC)

47. NAS re-alleges and re-avers the allegations of paragraphs 1 through 24 hereof, as if fully set forth herein.

48. This is an action for exoneration at common law and in equity.

49. There exists a special relationship between NAS, as surety, and RDCC, as principal, arising out of the parties' business dealings related to the *Bonds*, such that it is appropriate for common law exoneration to exist.

50. NAS has fully and completely performed any and all obligations arising out of the parties' business dealings related to the *Bonds*, and is wholly without fault for any losses, expenses and/or liabilities which have and/or may ultimately arise therefrom.

51. NAS has incurred and/or or will incur losses and expenses associated with its investigation, defense and/or handling of the above-described claim against the *Bonds*. Additional indebtedness arising out of the special relationship will continue to accrue, including but not limited to the expenditure of funds paid: (i) in defense of the pending claims against the *Bonds*; and (ii) in resolution of the pending claims against the *Bonds*.

52. Any and all losses and expenses incurred and/or to be incurred as a result of the special relationship between NAS and RDCC, as well as any liability which may be imposed upon NAS as a result of the pending claim against the *Bonds*, arise only out of the vicarious,

constructive, derivative or technical liability imposed upon NAS as a result of the fault and/or wrongdoing of RDCC.

53. At common law, RDCC is responsible to NAS for any and all losses and expenses incurred and/or to be incurred, and RDCC is further obligated to immediately provide NAS with sufficient funds as needed to satisfy NAS's existing and potential obligations under the *Bonds*.

54. By virtue of the right of exoneration set forth at common law and in equity, NAS is entitled to RDCC's assets to protect NAS from any and all losses and/or expenses incurred and/or to be incurred in connection with NAS's issuance of the *Bonds*.

55. RDCC has failed to satisfy its obligations at common law and in equity by refusing to exonerate or otherwise place funds with NAS sufficient to cover the losses and/or expenses incurred and/or to be incurred under the *Bonds*.

56. Unless the personal assets of RDCC are collateralized, NAS will not be adequately secured for its obligation on the *Bonds*.

WHEREFORE, Plaintiff, NAS respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendant, RDCC, requiring RDCC to exonerate NAS at common law and in equity as follows: (a) provide collateral to NAS sufficient to exonerate NAS for its potential losses and expenses to be incurred; (b) pay and reimburse NAS for its attorneys' fees and costs incurred in prosecution of the instant action; and (c) award NAS such other and further relief as this Court deems necessary, just and proper.

### COUNT IV
### BREACH OF CONTRACT:
### DAMAGES / DEMAND FOR INDEMNIFICATION
### (AGAINST INDEMNITORS)

57. NAS re-alleges and re-avers the allegations of paragraphs 1 through 24 hereof, as if fully set forth herein.

58. This is an action for damages seeking relief at law under the *Indemnity Agreement*.

59. There exists a valid and fully enforceable contract between NAS and the INDEMNITORS, the terms of which are memorialized in the *Indemnity Agreement*.

60. NAS has fully performed all of its obligations under the *Indemnity Agreement*.

61. As a result of the various claims against the *Bonds*, NAS has made demand upon the INDEMNITORS under the *Indemnity Agreement* for the payment in satisfaction of the losses and/or expenses incurred and/or to be incurred by NAS.

62. The INDEMNITORS have failed and/or refused to fully perform their obligations under the *Indemnity Agreement*, including but not limited to their obligation to indemnify NAS.

63. As a proximate result of the INDEMNITORS' breach of their obligations under the *Indemnity Agreement*, NAS has and will continue to incur substantial financial damages, including but not limited to the expenditure of funds paid: (i) in defense of the pending claims against the *Bonds*; and/or (ii) in resolution of the pending claims against the *Bonds*.

WHEREFORE, Plaintiff, NAS respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendants INDEMNITORS, awarding NAS its compensatory damages which have been and/or will be incurred as a result of the INDEMNITORS' breach of the *Indemnity Agreement*, awarding NAS its attorneys' fees and costs incurred in prosecution of the instant action pursuant to the terms of the *Indemnity Agreement*, and awarding NAS such other and further relief as this Court deems necessary, just and proper.

## COUNT V
## COMMON LAW INDEMNIFICATION
## (AGAINST RDCC)

64. NAS re-alleges and re-avers the allegations of paragraphs 1 through 24 hereof, as if fully set forth herein.

65. This is an action for damages seeking relief at common law and in equity.

66. There exists a special relationship between NAS, as surety, and RDCC, as principal, arising out of the parties' business dealings related to the *Bonds*, such that it is appropriate for common law indemnification to exist.

67. NAS has fully and completely performed any and all obligations arising out of the parties' business dealings related to the *Bonds*, and is wholly without fault for any losses, expenses and/or liabilities which have and/or may ultimately arise.

68. NAS has incurred and/or will incur losses and expenses as a result of the special relationship between NAS and RDCC.  Additional indebtedness arising out of the special relationship has and will continue to accrue, including but not limited to the expenditure of funds paid: (i) in defense of the pending claims against the *Bonds*; and (ii) in resolution of the pending claims against the *Bonds*.

69. Any and all losses and expenses incurred and/or to be incurred as a result of the special relationship between NAS and RDCC, as well as any liability which may be imposed upon NAS as a result of the pending claim against the *Bonds*, arise only out of the vicarious, constructive, derivative or technical liability imposed upon NAS as a result of the fault and/or wrongdoing of RDCC.

70. At common law, RDCC is responsible to NAS for any and all losses and/or expenses incurred or to be incurred.

WHEREFORE, Plaintiff, NAS respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the Defendant, RDCC, awarding NAS its compensatory damages which have been and/or will be incurred as a result of NAS's payment of losses and expenses for which RDCC should be liable under the legal theory of common law indemnity, awarding RDCC

its reasonable attorneys' fees and costs incurred in prosecution of the instant action, and awarding NAS such other and further relief as this Court deems necessary, just and proper.

DATED this 8th day of January 2021.

        **ETCHEVERRY HARRISON LLP**
        Attorneys for NAS
        150 South Pine Island Road, Suite 105
        Ft. Lauderdale, FL 33324
        Phone: (954) 370-1681
        Fax: (954) 370-1682
        etcheverry@etchlaw.com
        service@etchlaw.com

By: */s/ Edward Etcheverry*
     Edward Etcheverry, Fla. Bar No.: 856517
     Justin Etcheverry, Fla. Bar No.: 1002742